James D. STOUT, et al., Plaintiffs,

v.

J.D. BYRIDER, et al., Defendants.

No. 5:98–CV–2830.

United States District Court,
N.D. Ohio,
Eastern Division.

June 9, 1999.

John Timothy Murray, Sr., Sylvia Margo Antalis, Murray & Murray, Sandusky, OH, for plaintiffs.

Gary William Johnson, John A. Albers, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, William F. Kolis, Jr., Richard D. Panza, Wickens, Herzer & Panza, Lorain, OH, for J.D. Byrider aka Docherty Motors, Inc., defendant.

Gary William Johnson, John A. Albers, William F. Kolis, Jr., Richard D. Panza, Herzer & Panza, Lorain, Lorain, OH, for T & J Acceptance Corporation dba Carnow Acceptance Company, defendant.

## ORDER

GWIN, District Judge.

In this case, Plaintiffs James D. Stout and Shirley A. Brown make claim for fraud, violations of Ohio's Consumer Sales Practices Act, and the federal Truth–in–Lending Act arising from the plaintiffs' purchase of used motor vehicles. Now before the Court is the defendants' motion to compel arbitration pursuant to 9 U.S.C. § 1, *et seq.*, the Federal Arbitration Act [Doc. 8].[1]

With their motion, the defendants say Plaintiffs Stout and Brown agreed to arbitrate disputes against the defendants relating to the sale and financing of automobiles. Defendants ask the Court to enforce the arbitration agreements and refer this case to arbitration.

Plaintiffs Stout and Brown oppose arbitration arguing that the defendants fraudulently induced their assent to the arbitration and dispute resolution agreements. Plaintiffs say that because the agreements are one-sided and benefit only the defendants, the agreements are unenforceable adhesion contracts.

Because the defendants gave plaintiffs an opportunity to ask questions and review the agreements before signing them, the Court finds that the arbitration agreements are enforceable. Therefore, the Court grants the defendants' motion to compel arbitration under the terms of the agreements. As arbitration will resolve the issues in suit, the Court dismisses this case without prejudice to reinstatement should further proceedings be needed after arbitration.

### I. Factual background

In 1998, Plaintiffs James D. Stout and Shirley Brown purchased used automobiles from Docherty Motors in Sandusky, Ohio. They obtained financing to purchase the cars from Defendant CarNow Acceptance Corporation ("CNAC").

Plaintiffs Stout and Brown say the vehicles they purchased from Defendant Byri-der were defective. Stout and Brown claim they purchased expensive warranties without knowledge that these warranty charges were included in the finance charges. The plaintiffs say the defendants have engaged in a standard practice of uniformly misrepresenting the quality and value of the vehicles they sell and the cost and value of warranties.

Plaintiffs Stout and Brown also claim that with their purchase contracts, the defendants required them to sign standard form arbitration agreements. The plaintiffs now oppose arbitration under these contracts. They say the defendants did not explain the legal consequences of agreeing to arbitrate disputes relating to the sale and financing of the automobiles. Plaintiffs urge the Court not to compel arbitration because the arbitration agreements unjustly abrogate their legal rights to bring claims in court.

Considering these facts, the Court decides whether to order arbitration pursuant to 9 U.S.C. § 1, *et seq.*

### II. Discussion

In this case, the parties dispute whether certain standard arbitration agreements the plaintiffs signed are enforceable. Defendants maintain the agreements are enforceable because the plaintiffs had time to review the agreements and ask questions before signing the contract. Plaintiffs say the defendants failed to fully explain the arbitration agreements. Because this case concerns arbitration agreements involving transactions in interstate commerce, the Federal Arbitration Act governs.

The Federal Arbitration Act embodies "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The policy supporting the Act is to "ensure judicial enforcement of privately

---

1. On June 7, 1999, this Court denied the plaintiffs' motion to certify this case as a class action under Federal Rule of Civil Procedure 23.

made agreements to arbitrate." *Dean Witter* at 219, 105 S.Ct. 1238; *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 932 (6th Cir.1998).

■ Section 2 of the Federal Arbitration Act provides that written agreements to arbitrate in a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 provides for a stay of proceedings in district courts when an issue is determined to be arbitrable.[2] 9 U.S.C. § 3. Section 4 gives district courts authority to compel arbitration when a party neglects or refuses to comply with an arbitration agreement. 9 U.S.C. § 4.

■ Where the Act applies, federal law and not state law generally governs the arbitrability of a dispute. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, because arbitration is a matter of contract, a party cannot be compelled to arbitrate any claims he or she did not agree to arbitrate when making the contract. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

■ If a party opposing arbitration shows "well supported claims that the agreement to arbitrate itself resulted from fraud, 'overwhelming economic power,' or unfair pressure under principles of contract, the court may revoke the contract." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("[T]he federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue'.") (citation omitted).[3]

Here, Plaintiffs Stout and Brown each entered private contracts with the defendants. Plaintiffs now say the defendants fraudulently induced them into signing these contracts. Plaintiffs ask the Court to find the arbitration contracts adhesive and unconscionable.

■ In deciding whether to order arbitration, courts consider four principal issues: (1) whether the parties agreed to arbitrate the dispute; (2) the scope of the arbitration agreement; (3) if federal claims are asserted, whether Congress intended arbitration to govern the claims, and (4) if only some claims are arbitrable, whether to stay the proceedings pending arbitration. *H & M Charters, Inc. v. Reed*, 757 F.Supp. 859, 864 (S.D.Ohio 1991) (quoting *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961 (S.D.N.Y.1987); *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F.Supp. 1273, 1278 (S.D.Ohio 1990).

■ Applying these standards, the Court first decides whether the parties agreed to arbitrate their disputes. The

---

**2.** Courts may dismiss cases subject to reinstatement where there "is nothing left for the district court to do but execute judgment." *Arnold v. Arnold Corp.—Printed Communications for Business*, 920 F.2d 1269, 1275–78 (6th Cir.1990); *see also Raiola v. Union Bank of Switzerland, LLC*, 47 F.Supp.2d 499, 506 (S.D.N.Y.1999) (dismissing without prejudice to reinstatement subject to need for proceedings following arbitration).; *Rand v. J.C. Bradford & Co.*, No. 98 Civ. 4906(DLC), 1998 WL 872421 (S.D.N.Y. Dec. 15, 1998) (same).

**3.** *See also Rhode v. E & T Investments, Inc.*, 6 F.Supp.2d 1322, 1326–27 (M.D.Ala.1998) (same) (citations omitted); *Arbitration Between Management Recruiters Int'l, Inc. and Nebel*, 765 F.Supp. 419, 420 (N.D.Ohio 1991) ("A claim that the contract containing the arbitration clause was induced by fraud does not defeat a motion to compel arbitration unless the claimant can demonstrate specifically that the arbitration clause itself was fraudulently induced.").

record evidence shows that the parties did agree to arbitration.

First, the plaintiffs each engaged in lengthy discussions with Mr. Wendall Gaddie, Defendant CNAC's financing representative. These discussions involved Mr. Gaddie explaining many standard form agreements relating to the purchase of the vehicles. With each plaintiffs' automobile purchase, Gaddie sat with the plaintiff and individually presented the plaintiff with each form for review and signature. Gaddie also encouraged the plaintiffs to ask questions if they did not understand the forms.

Although the financing process appears to use prepared forms and organized transaction "jackets," each customer financing transaction is very systematic. Mr. Gaddie systematically presents the customer with individual forms to sign and he provides a brief explanation of the form. If a customer asks a question, Mr. Gaddie answers the inquiry and gives further explanation. During the plaintiffs' meetings with Gaddie, each plaintiff specifically reviewed the arbitration agreements at issue, but did not ask questions.[4] Also, each plaintiff signed the arbitration forms, representing that they understood the terms of the agreement. These facts show that the plaintiffs agreed to arbitration.[5]

Second, both Plaintiffs Stout and Brown say they read the contract language before signing the agreements. The contract language itself is clear. On January 31, 1998, Plaintiff Brown purchased and financed a 1991 Ford Fiesta. In doing so, she read and signed a form captioned "Agreement for Binding Arbitration." The agreement states in part:

> Except as described below, in the event of a dispute under the terms of the Contracts, the Dealer and the Purchaser(s) hereby agree to submit such dispute to the *Better Business Bureau* for

resolution by binding arbitration according to the rules of the Better Business Bureau.
> THE PARTIES HEREBY FURTHER AGREE THAT THE ONLY CLAIM NOT SUBJECT TO THIS AGREEMENT IS A CLAIM BY THE DEALER THAT PURCHASER(S) HAVE FAILED TO MAKE PAYMENTS ON A TIMELY BASIS IN COMPLIANCE WITH THE CONTRACTS, SUCH A CLAIM MAY BE PURSUED IN A COURT OF LAW.

Agreement for Binding Arbitration, dated January 31, 1998 (emphasis added).

The contract language clearly says that disputes between the "Dealer" and "Purchaser" will be resolved through arbitration before the Better Business Bureau. The contract says the only exception to this agreement to arbitrate is the Dealer's right to pursue default claims in court. Taken together, the terms infer that a purchaser cannot bring claims in court.

Private arbitration offers potential real benefits to both parties in cost effective and quick resolution of disputes that may arise. The plaintiffs make no showing that arbitration before the Better Business Bureau is unconscionable. The defendants disclosed these conditions in bold-print type in the agreement. Plaintiff Brown does not show evidence that she objected to these terms or that the defendants required her to accept these terms without question.

When Plaintiff Stout purchased a 1992 Chevrolet Camaro on May 26, 1998, he signed a similar agreement. Stout signed a form captioned "Dispute Resolution Agreement" that states in part:

> With the exception described below, in the event of a dispute(s) under the terms of the Contract(s), the parties will submit such dispute(s) for resolution by

---

**4.** See Videotape of customer transactions, Defendants' Exhibit C.

**5.** *See Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 933 (6th Cir.1998) (stating that "the

issue of fraudulent inducement of a contract is to be decided by an arbitrator, unless the making of the arbitration agreement itself was fraudulently induced.").

binding arbitration instead of submitting disputes to a court or jury. For example, this applies to all disputes brought under state or federal consumer protection and lending, laws. Arbitration will be according to the arbitration rules of the *American Arbitration Association.* THE PARTIES AGREE THAT THE ONLY CLAIMS NOT SUBJECT TO THIS AGREEMENT ARE: 1) A CLAIM BY EITHER PARTY SEEKING TOTAL DAMAGES UNDER $10,000; AND 2) CLAIMS RELATING TO REPOSSESSION OR REPLEVIN OF THE VEHICLE.

Purchaser, Dealer, and all assignees shall each pay their own expenses, including attorneys' fees, and shall bear equally the fees and expenses of the arbitrator. Judgment upon any arbitrator's award may be entered by any court having competent jurisdiction.

\* \* \* \* \* \*

BY SIGNING BELOW, ALL PARTIES ACKNOWLEDGE THAT THEY HAVE READ THIS DISPUTE RESOLUTION AGREEMENT AND THAT THEY AGREE TO ITS TERMS AND CONDITIONS.

Dispute Resolution Agreement, dated May 26, 1998 (emphasis added).

After reviewing these agreements and the videotape evidence of these transactions, the Court finds that Plaintiffs Stout and Brown voluntarily and expressly agreed to arbitrate any claims.

■ The Court next considers the scope of these agreements and whether Congress intended the Federal Arbitration Act to govern the plaintiffs' claims. Under the Act, "any doubts concerning the scope of arbitrability should be resolved in favor of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25–6; 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *McGinnis v. E.F. Hutton & Co., Inc.,* 812 F.2d 1011, 1013 (6th Cir.), *cert. denied,* 484 U.S. 824, 108 S.Ct. 87, 98 L.Ed.2d 49 (1987).

■ The scope of the contracts at issue favors arbitration. First, the arbitration agreements the plaintiffs signed are broad. The contracts require the plaintiffs to arbitrate all disputes "under the terms of the 'Contracts.'" To the extent the plaintiffs dispute issues that relate to the purchase of their vehicles (e.g., payments, financing, or the warranty agreements), such matters are arbitrable.

■ Second, all of the plaintiffs' claims against the defendants arise "under the contracts" and are subject to arbitration. In their First Amended Complaint, the plaintiffs make claim for fraud, violations of Ohio's Consumer Sales Practices Act, and violations of the federal Truth–in–Lending Act. These claims clearly fall within the scope of the Federal Arbitration Act. Claims arising under the Truth–in–Lending Act, 15 U.S.C. 1640(e), presumptively involve interstate commerce. *Prima Paint Corp.,* 388 U.S. at 401, 87 S.Ct. 1801; *McCarthy v. Providential Corp.,* No. C 94–0627, 1994 WL 387852, \*2 (N.D.Cal. July 19, 1994), *appeal dismissed,* 122 F.3d 1242 (9th Cir.1997), *cert. denied,* — U.S. —, 119 S.Ct. 275, 142 L.Ed.2d 227 (1998). This presumption is satisfied here since the plaintiffs' contracts are for the purchase of motor vehicles—transactions involving interstate commerce. Because the plaintiffs' state law claims arise from the same transactions, these claims also fall within the scope of the Act. 9 U.S.C. § 2.

■ Having decided this, the Court next considers whether Plaintiffs Stout and Brown show sufficient evidence of fraud in the inducement to defeat arbitration.

■ Where a plaintiff challenges the making of the arbitration agreement itself, as opposed to the terms of the contract as a whole, federal courts may rule on the merits of the claim. *Prima Paint Corp.,* 388 U.S. at 404, 87 S.Ct. 1801. In doing so, the court applies state law principles governing the formation of contracts. *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Ferro,* 142 F.3d at 934.

Plaintiff Stout and Brown allege the defendants fraudulently induced their assent to arbitration. Plaintiffs say the defendants presented the agreements but failed to fully explain that arbitration abrogated the plaintiffs' legal rights to bring claims in state court. Arguing the agreements are unenforceable adhesion contracts, plaintiffs rely on the Ohio Supreme's Court's 1998 decision in *Williams v. Aetna Financial Company*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999). Plaintiffs suggest the *Williams* case stops this Court from finding the arbitration agreements enforceable. The Court disagrees.

In *Williams*, the Ohio Supreme Court reviewed an arbitration clause contained in a consumer credit agreement between a plaintiff home buyer and Aetna, a home equity lender. The borrower, Mildred Williams, signed a loan agreement contract to have work done on her home. The loan agreement effectively was a second mortgage on her home and included an arbitration clause requiring Williams to arbitrate any disputes outside the courts.

Considering whether the agreement between Aetna and Williams was enforceable, the Ohio Supreme Court found the arbitration clause to be unconscionable. Although the court recognized the strong presumption in federal and state law favoring arbitration agreements, the court decided this presumption was overcome by evidence of an egregious conspiracy to defraud the plaintiff:

> We determine that any presumption in favor of arbitration was overcome based on the entire record of this case. Furthermore, we believe that the presumption in favor of arbitration should be substantially weaker in a case such as this, when there are strong indications that the contract at issue is an adhesion

contract, and the arbitration clause itself appears to be adhesive in nature. In this situation, there arises considerable doubt that any true agreement ever existed to submit disputes to arbitration. *Id.* at 473, 700 N.E.2d 859.[6]

Although the *Williams* decision is noteworthy considering the plaintiffs' claims for fraudulent inducement, the decision does not control here. First, the Federal Arbitration Act governs the instant case. In *Williams*, the Ohio Supreme Court construed a court's obligation to compel arbitration under Ohio Revised Code § 2711.01, Ohio's arbitration statute. This obligation is not present here.

■ Second, to the extent the Federal Arbitration Act requires federal courts to consider issues of state contract law, this Court applies and is guided by the federal policy favoring arbitration. *Moses*, 460 U.S. at 24, 103 S.Ct. 927. Further, even considering the well-articulated principles of unconscionability stated in *Williams*, this Court does not find the agreements here to be unenforceable adhesion contracts.

■ In Ohio, a plaintiff sufficiently states a claim that an arbitration agreement is unconscionable or takes the form of an adhesion contract by showing that (1) the contract terms are one-sided or unreasonably favorable to the other party, (2) that disparity between the parties' bargaining power denies the less advantaged party meaningful choice in accepting the terms of the contract, and (3) the less advantaged party cannot obtain their "desired product or services except by acquiescing in form contract." *See Williams*, 83 Ohio St.3d at 482, 700 N.E.2d 859 (Cook, J., dissenting); *Sekeres v. Arbaugh*, 31 Ohio St.3d 24, 31, 508 N.E.2d 941 (1987) (H.Brown, dissenting) (quoting Black's Law Dictionary at 38, defining "adhesion contract" (5th ed.1979)).[7]

---

**6.** The *Williams* court stated that the arbitration clause contained in Williams' consumer contract "necessarily engendered more reservations regarding its enforceability under principles of equity than an arbitration clause in a different setting...." *Id.* at 472, 700 N.E.2d 859.

**7.** *See Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 383 n. 5 (9th Cir.1965) ("'Adhesion

■ Here, the Court finds the arbitration provisions are not so one-sided as to be unconscionable. Both agreements call for submission to legitimate resolution panels. No evidence supports a claim that the Better Business Bureau or the American Arbitration Association would not be able to fairly adjudicate plaintiffs' claims. Plaintiff Stout's agreement provides that each party is to bear their own costs. These provisions are conscionable.

Plaintiffs do not show the defendants denied opportunity to object or question the terms of the arbitration agreements. Plaintiffs concede they could ask questions if they did not understand the agreements. Nor do the plaintiffs show that the defendants' would have refused to sell the vehicles had the plaintiffs decided not to sign the agreements. Also, these contracts involved the purchase of used vehicles of a kind that are widely available from a huge number of sellers if Stout or Brown found the arbitration provision unacceptable. Neither Stout nor Brown challenged the contract at the time they signed it, despite having opportunity to do so.[8]

Here, the defendants properly rely on the contract language and the strong presumption under federal law favoring arbitration. Applying federal law to these facts favors arbitration.

■ The Federal Arbitration Act requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Dean Witter,* 470 U.S. at 221, 105 S.Ct. 1238. The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218, 105 S.Ct. 1238 (citing §§ 3 and 4 of the Act) (emphasis added).

The mandatory provisions of the Federal Arbitration Act do not permit parties to an arbitration agreement "to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating,* 465 U.S. 1, 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

As earlier discussed, neither Brown or Stout give sufficient evidence that the defendants fraudulently induced them to sign the arbitration agreements. Plaintiffs Stout and Brown say they each read the respective agreement before signing it. Defendants also offered the plaintiffs an opportunity to ask questions. Furthermore, the contract language was clear and unambiguous. The defendants presented the arbitration agreements to the plaintiffs on a separate form. The contract terms were not hidden in boilerplate language or otherwise disguised.[9]

Taken together, the facts of this case favor enforcing the arbitration agreements.

### III. Conclusion

Having reviewed the facts of this case, the Court concludes the plaintiffs agreed to arbitrate their claims before non-judicial tribunals. The court further finds that the plaintiffs do not give sufficient evidence that the defendants fraudulently induced their assent to the arbitration agreements. Accordingly, the Court grants the defen-

---

contract' is a handy shorthand descriptive of standard form printed contracts prepared by one party and submitted to the other on a 'take it or leave it' basis. The law has recognized there is often no true equality of bargaining power in such contracts and has accommodated that reality in construing them.") (historical citations omitted).

**8.** *See Ferro,* stating:

In determining the validity of an arbitration agreement contained in a contract subject to the FAA, the Supreme Court has held that once a court determines that the agreement to arbitrate has not been fraudulently induced all other issues falling within that agreement are to be sent to arbitration. 142 F.3d at 933.

**9.** See Exhibits 5 and 6 to Plaintiffs' Response Brief to Defendants' Motion to Compel.

dants' motion to compel arbitration. 9 U.S.C. § 4.

As arbitration will resolve the issues in suit, the Court denies that part of the defendants' motion seeking to stay this case. The Court dismisses this case without prejudice to reinstatement should further proceedings be needed after arbitration. The parties shall proceed to arbitration before the Better Business Bureau or the American Arbitration Association, respectively, and shall comply with the terms of the agreements.

IT IS SO ORDERED.