Marsha ORCUTT, M.D., Plaintiff,

v.

KETTERING RADIOLOGISTS, INC., et al., Defendants.

No. C–3–00–545.

United States District Court, S.D. Ohio, Western Division.

March 11, 2002.

Randolph Freking, George Reul, Cincinnati, OH, for Plaintiff.

William J. Faruki, Charles Faruki, Richard Talda, Dayton, OH, for Defendants.

DECISION AND ENTRY SUSTAINING THE MOTIONS OF KETTERING RADIOLOGISTS, INC., AND KETTERING RADIOLOGISTS IMAGING CENTER, INC., TO COMPEL ARBITRATION (DOC. # 9–1) AND TO DISMISS (DOC. # 9–2); KETTERING MEDICAL CENTER'S MOTION TO STAY PROCEEDINGS (DOC. # 17) OVERRULED; CONFERENCE CALL SET WITH THE COURT AND COUNSEL FOR PLAINTIFF AND COUNSEL FOR KETTERING MEDICAL CENTER TO RESET TRIAL DATE AND OTHER DATES LEADING TO THE RESOLUTION OF THIS LITIGATION BETWEEN THOSE PARTIES

RICE, Chief Judge.

The instant litigation arises out of the termination of Plaintiff Marsha Orcutt, M.D., from her employment with Defendants Kettering Radiology, Inc. ("KRI"), and Kettering Radiologists Imaging Center, Inc. ("KRIC"). According to her Complaint (Doc. # 1), in November of 1991, Dr. Orcutt was hired by KRI to perform services as a radiologist. She and KRI executed a written employment contract on November 19, 1991, which was to

be effective between March 16, 1992, and March 15, 1993. On March 18, 1993, Orcutt and KRI modified the agreement to reflect a new compensation formula and a new vacation schedule, and to extend the term for an additional year. Plaintiff alleges that the employment contract was subsequently extended and modified by verbal agreement, and was in effect until she was terminated on May 19, 1999.[1]

In January of 1997, KRI and KRIC entered into an arrangement with the Kirkland Medical Group ("Kirkland"). In accordance with that arrangement, Kirkland performed radiology tests on its patients at its premises, and the films were sent to KRI and KRIC for interpretation. Kirkland allegedly billed the United States government and third party payers, and paid KRI $7.00 per interpretation. Kirkland also referred patients to KRI for the performance and interpretation of more expensive tests. Plaintiff alleges that KRI's agreement with Kirkland for the interpretation of films outside of Kirkland's premises is a violation of Medicare rules.

On several occasions, Dr. Orcutt expressed her concerns regarding the quality of films from Kirkland and the legality of KRI's arrangement with Kirkland under Medicare reimbursement laws. Between June and July of 1998, Plaintiff expressed her concerns to KRI's Board of Directors. After the Board repeatedly failed to address those issues, Plaintiff informed KRI that she would no longer interpret any of Kirkland's films.

On March 25, 1999, Plaintiff had an altercation with Dr. Jerry Andrews at Kettering Medical Center ("KMC"), during which Dr. Andrews informed Plaintiff that he would not present two cases during the Tumor Board Conference. When Plaintiff

commented that she considered his refusal to be unprofessional, he approached her in an intimidating manner and repeatedly yelled at her that she was a bitch. As a result of the incident, Dr. Orcutt filed a sexual harassment complaint with the Chief Executive Officer of KMC. On April 13, 1999, Plaintiff met with Dr. Gregory Wise, the Vice President of Medical Integration at KMC. She believed that the purpose of the meeting was to discuss her sexual harassment complaint. However, the discussion turned to an incident that had occurred between Plaintiff and an ultrasound technician on March 4, 1999. On April 14, 1999, KMC informed Plaintiff that she had violated the "rules and regulations" of the hospital and the contract between KMC and KRIC, presumably due to the March 4th incident. On April 22, 1999, Plaintiff was placed on administrative leave and relieved of all duties at KMC, pending action by KRI's Board regarding her employment. On May 19, 1999, KRI's Board of Directors voted to terminate Plaintiff's employment. Her privileges with KMC were terminated on May 26, 1999.

On November 6, 2000, Plaintiff brought suit in this Court against KRI, KRIC, and KMC. She set forth eleven claims for relief against KRI and KRIC, to wit: (1) a claim for violation of the whistleblower provisions of the False Claims Act, 31 U.S.C. § 3730(h) (Count One); (2) a state law claim for retaliatory discrimination and termination, in violation of Ohio Rev.Code § 4112.02(A) and § 4112.99, based on her opposition to harassment (Count Two); (3) a state law claim for retaliatory discharge, in violation of public policy, based on her opposition to discriminatory employment practices (Count Three); (4) a state law

---

1. Although Plaintiff alleges that she had an employment contract with KRI alone, she has also alleged that she was an employee of KRIC (Compl.¶ 1). In June of 1994, Plaintiff became a director and shareholder of both KRI and KRIC (id. ¶¶ 12–13).

claim for sex discrimination, in violation of Ohio Rev.Code § 4112.99 (Count Four); (5) a state law claim for sex discrimination, in violation of public policy (Count Five); (6) a state law claim for religious discrimination, in violation of Ohio Rev.Code § 4112 (Count Six); (7) a state law claim for religious discrimination, in violation of public policy (Count Seven); (8) a state law claim for breach of contract (Count Eight); (9) a state law claim for promissory estoppel (Count Nine); (10) a state law claim for breach of implied contract (Count Ten); and (11) a state law claim for intentional infliction of emotional distress (Count Twelve). Plaintiff also asserted claims against KMC, to wit: (1) a state law claim for breach of implied contract (Count Ten); (2) a state law claim for tortious interference with contractual relations (Count Eleven); and (3) a state law claim for intentional infliction of emotional distress (Count Twelve).

Pending before the Court are KRI and KRIC's Motion to Compel Arbitration (Doc. # 9–1) and their Motion to Dismiss Plaintiff's Complaint (Doc. # 9–2), as well as KMC's Motion to Stay Proceedings Pending Arbitration (Doc. # 17). For the reasons assigned, KRI and KRIC's Motions to Compel Arbitration (Doc. # 9–1) and to Dismiss (Doc. # 9–2) are SUSTAINED. KMC's Motion to Stay Proceedings is OVERRULED.

In its Motion to Compel Arbitration, KRI asserts that its employment contract with Plaintiff contains an arbitration agreement, which is enforceable under the Federal Arbitration Act ("FAA") and the Ohio Arbitration Act, and that her claims fall within the scope of that agreement. KRIC asserts that Plaintiff is equitably estopped from avoiding arbitration of her claims against it, because those claims are intertwined with and substantially interdependent with the allegations raised against KRI.

The Court begins with a discussion of the scope of the Federal Arbitration Act ("FAA"). That Act was designed to quell the traditional common-law hostility to arbitration clauses and to ensure enforcement of such agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). To that end, Congress provided that provisions in any "contract evidencing a transaction involving commerce" which provide for settlement by arbitration of disputes arising out of such contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2 (1947). The Supreme Court has recently clarified that the FAA applies to virtually all contracts of employment, and that only employment contracts of transportation workers are exempted from FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

In determining whether the parties agreed to arbitrate their dispute, the Court is to use the federal substantive law of arbitrability.[2] *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

---

**2.** Because the FAA applies to KRI and KRIC's Motion, the Court need not address the applicability of the Ohio Arbitration Act.

waiver, delay, or a like defense to arbitrability." *Id.* The FAA mandates that district courts refer parties to arbitration on issues as to which the parties have agreed to arbitrate. *Byrd,* 470 U.S. at 218, 105 S.Ct. 1238. Moreover, the FAA *"requires piecemeal resolution when necessary to give effect to an arbitration agreement." Moses H. Cone Mem'l Hosp.,* 460 U.S. at 20, 103 S.Ct. 927 (emphasis in original).

When considering a motion to compel arbitration and to dismiss, due to an arbitration provision, a court has four tasks: *first,* it must determine whether the parties agreed to arbitrate; *second,* it must determine the scope of that agreement; *third,* if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and *fourth,* if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *See Compuserve, Inc. v. Vigny Int'l Finance, Ltd.,* 760 F.Supp. 1273, 1278 (S.D.Ohio 1990); *Stout v. Byrider,* 228 F.3d 709, 714–15 (6th Cir.2000), *cert. denied,* 531 U.S. 1148, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001). Plaintiff has challenged Defendants' Motion on a number of grounds. *First,* she asserts that her employment contract with KRI has expired and, therefore, that agreement (including the arbitration provision within it) is unenforceable. *Second,* she argues that the Federal Arbitration Act does not apply to contracts of employment.[3] *Third,* she asserts that the False Claims Act claim is not subject to arbitration. *Fourth,* she contends that the arbitration agreement violates public policy and, thus, is unenforceable. Plaintiff's arguments will be addressed as part of the Court's analysis of the four tasks listed above.

### A. *Agreement to Arbitration*

#### 1. *KRI*

■ The Court's first task is to determine whether the parties have agreed to arbitration. Paragraph 13 of Plaintiff's written employment contract with KRI contains an arbitration provision. It provides: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration in the City of Dayton, in accordance with the American Arbitration Association and any judgment on the award rendered may be entered in any court having jurisdiction thereof." In her Opposition Memorandum (Doc. # 8), Plaintiff raises two arguments related to the enforceability of this provision. *First,* she asserts that the arbitration agreement is contrary to public policy. *Second,* she asserts that her employment contract with KRI had expired and, therefore, that agreement (including the arbitration provision within it) is unenforceable.

With regard to her public policy argument, the Supreme Court has construed the FAA as establishing a liberal policy in favor of arbitration. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754, 762, 151 L.Ed.2d 755 (2002); *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24, 103 S.Ct. 927. Recent Supreme Court authority has further made clear that arbitration under the FAA is a matter of contract enforcement: "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.... Arbitration under the [FAA] is a matter of consent, not coercion.'" *Waffle House,* 122 S.Ct. at 764 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stan-*

---

**3.** In light of the Supreme Court's decision in *Circuit City,* Plaintiff's argument that the FAA does not apply to employment contracts is clearly unsupportable.

ford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Although the FAA provides that arbitration agreements are generally valid, such provisions may be attacked under "such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. General state contract principles, as opposed to state laws applicable only to arbitration provisions, may regulate, and in the appropriate case, invalidate, arbitration clauses. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 684–85, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Andersons, Inc., v. Horton Farms, Inc.,* 166 F.3d 308, 322 (6th Cir.1998). Recognized defenses include fraud, duress and unconscionability. *Id.* Federal courts apply state law to determine whether any of these defenses is applicable. *Id.*

Although Plaintiff does not specifically argue that the arbitration clause in her employment contract is invalid due to fraud, duress or unconscionability, she asserts that enforcement of mandatory arbitration provisions in employment contracts is contrary to public policy. In essence, she has sought a determination that mandatory arbitration provisions in employment contracts are *per se* unconscionable. Such a holding would be contrary to Supreme Court and Sixth Circuit precedent, and to the Supreme Court's strong support of arbitration. For example, in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court required a securities representative to submit his federal age discrimination claim to arbitration, in accordance with the arbitration provision in his New York Stock Exchange registration application, which was required as a condition of his employment. The Court noted that "mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. Likewise,

in *Haskins v. Prudential Ins. Co. of Amer.,* 230 F.3d 231 (6th Cir.2000), *cert. denied,* 531 U.S. 1113, 121 S.Ct. 859, 148 L.Ed.2d 773 (2001), the Sixth Circuit concluded that an employee should be compelled to arbitrate his federal employment-related civil rights claims, pursuant to a contract with the National Association of Securities Dealers (U–4 form), even though the form did not specifically delineate the claims subject to arbitration and his employer did not provide him with a copy of the NASD rules pertaining to arbitration. The employer had required the plaintiff to sign the NASD form as a condition of his employment. The Sixth Circuit enforced the arbitration provision therein, reasoning that "[o]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." Thus, the Sixth Circuit has rejected the position that mandatory arbitration provisions in employment contracts are contrary to public policy, in absence of some ground upon which a contract may be voided. Herein, Plaintiff has neither argued nor provided evidence that the arbitration provision in her employment contract was procured by fraud, duress, or mistake, or is otherwise unconscionable. Accordingly, the Court has no basis to find the provision unenforceable as contrary to public policy or under principles of contract law.

■ Plaintiff's second argument, *i.e.,* that the employment contract had expired, runs counter to her Complaint. As noted by Defendants, Plaintiff has specifically alleged that her employment was governed by a valid employment contract. Paragraph 11 of her Complaint provides, in pertinent part: "Defendant KRI and Plaintiff entered into a written Employment Contract on or around March 19,

1991, a copy of which is attached hereto as Exhibit A. That employment contract was subsequently extended and modified by verbal agreement and was in effect as of May 19, 1999." [4] (Compl.¶ 11). Moreover, Count Eight of her Complaint alleges a breach of contract claim against KRI and KRIC, in which she alleges that KRI "terminated Plaintiff's employment unfairly and without good and proper cause in violation of the terms of the Employment Agreement." Based on the allegations of her Complaint, Plaintiff has acknowledged that such a contract exists and remained in force up to the time of her termination. Plaintiff has *not* set forth any allegations or claims which assume, in the alternative, that her contract had expired. Thus, it has been her consistent position in her Complaint that her employment contract was in effect as of May 19, 1999. Plaintiff is estopped from arguing otherwise in her Opposition Memorandum, in an effort to avoid the arbitration provision. Accordingly, the Court concludes that Plaintiff has entered into an arbitration agreement with KRI.

### 2. *KRIC*

■ KRIC does not contend that it was a party to Plaintiff's employment contract with KRI. However, it argues that the claims against it are subject to the arbitration provision in that contract, pursuant to the doctrine of equitable estoppel, because Plaintiff's allegations against it are intertwined and substantially interdependent with the allegations against KRI. Relying upon *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.), *cert. denied*, 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000), KRIC argues that a non-signatory to a contract may compel a signatory to an arbitration agreement under an equitable estoppel theory.

The Eleventh Circuit succinctly articulated this theory in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999):

Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

177 F.3d at 947 (citations omitted). A number of courts have adopted this approach. *E.g., Thomson–CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773 (2d Cir.1995); *Grigson, supra; Hughes*

---

**4.** Plaintiff failed to attach the employment contract to her Complaint. However, Plaintiff submitted a copy of the contract, along with the 1993 written amendment, as an exhibit to her Opposition Memorandum (Doc. # 8). The Court notes that Plaintiff also failed to attach the Stock Redemption Agreement and the Exclusive Radiology and Magnetic Resonance Service Agreement to her Complaint, both of which she stated were attached as Exhibits B and C, respectively.

*Masonry Co., Inc. v. Greater Clark Co. Sch. Blg. Corp.,* 659 F.2d 836 (7th Cir. 1981); *ATC Distribution Group, Inc. v. Gangei,* 2001 WL 1772022 (W.D.Ky. Dec.5, 2001).

Herein, Plaintiff has *not* contested KRIC's assertion that her claims against it are subject to arbitration under an equitable estoppel theory. Assuming, *arguendo,* that such a challenge was raised, it would be unavailing. In her Complaint, Plaintiff has alleged concerted conduct by KRI and KRIC, and she has sought to hold KRIC jointly and severally liable for *all* of the conduct of KRI, including the alleged discrimination, harassment, retaliation, and breach of contract. Thus, the Court concludes that Plaintiff's claims against KRI and KRIC are intertwined and substantially interdependent. Plaintiff must arbitrate her claims against KRIC to the same extent that she must arbitrate her claims against KRI.

**B.** *Scope of the Arbitration Provision*

■ *Second,* the Court must determine whether the parties agreed to arbitrate the instant dispute. "Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House,* 122 S.Ct. at 762. In the present case, Plaintiff has agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof." This Court and other courts have construed the phrase "arising out of or relating to" broadly, interpreting it to encompass all claims, contractual or tort, which touch upon matters covered by the agreement. *See, e.g., Parsley v. Terminix International Co.,* 1998 WL 1572764 (S.D.Ohio Sept. 15, 1998)(Rice, J.); *Battaglia v. McKendry,* 233 F.3d 720 (3d Cir. 2000). In her Complaint, Plaintiff alleges that she suffered discrimination, harassment, and retaliation by KRI during the course of her employment and was wrong-

fully terminated from her position. These claims clearly arise out of or relate to her employment agreement with KRI and, therefore, they all fall within the scope of the arbitration provision.

**C.** *Plaintiff's Federal Claim*

■ *Third,* because Plaintiff has asserted a claim under the False Claims Act ("FCA"), the Court must determine whether Congress intended for that claim to be subject to arbitration. Plaintiff's FCA claim is brought pursuant to section 3730(h), which prohibits retaliation against employees engaged in the protected activity of investigating possible fraud against the United States government. 31 U.S.C. § 3730(h). It provides, in pertinent part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

*Id.*

The Supreme Court has repeatedly recognized that federal statutory claims can

be appropriately resolved through arbitration, and it has enforced agreements to arbitrate such claims. *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). "Even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Id.* at 90, 121 S.Ct. 513 (citation omitted). The Supreme Court has held that "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

In support of her position that the FAA is inapplicable to her FCA claims, Plaintiff relies on *Nguyen v. City of Cleveland*, 121 F.Supp.2d 643 (N.D.Ohio 2000). Therein, the plaintiff, Pram Nguyen, was an employee of the City of Cleveland, who left his job with the City and began working for Parsons Engineering Sciences, Inc. ("Parsons"), as an engineer. In August of 1998, he filed a *qui tam* action against the City under the FCA, alleging that it had misused federal funds earmarked for air pollution control. After the United States intervened in the action, the City and the media learned that Nguyen had filed the *qui tam* action.[5] At the time, Parsons was the contractor on various projects for the City, and Nguyen was devoting all of his time to those projects. The City, having learned that Nguyen was the Relator in

the *qui tam* action, required Parsons to remove Nguyen from work on all City contracts. At the time it received the City's demand, Parsons knew that Nguyen had engaged in activities protected by the FCA. Nonetheless, Parsons responded to the City's demand by removing Nguyen from all City contracts. This left Nguyen with no work to perform, and as a result, he was terminated.

In response, Nguyen brought suit against the City of Cleveland and Parsons, pursuant to § 3730(h). *Id.* at 644–45. Parsons sought to compel arbitration of Nguyen's claim, in accordance with an arbitration clause in the plaintiff's employment contract. The district court rejected Parsons' motion to compel, reasoning that arbitration was contrary to the purposes of the FCA:

> Nguyen was originally the relator in a *qui tam* action brought against the City of Cleveland. In a *qui tam* action, the relator sues on behalf of the government as well as himself. He is not an officer or employee of the government, but he acts on its behalf. To that extent, the policies that favor district court jurisdiction are like the policies behind 28 U.S.C. § 1442(a), the statute that permits removal from state court to federal court of cases in which an officer of the United States is a defendant: the protection of agents of the government when they do the government's business. To be sure, the policy applies imperfectly to *qui tam* relators: where the government necessarily acts through its officers, the government may bring suits on its own behalf under the False Claims Act. It need not act through a

---

**5.** Pursuant to the FCA, when a *qui tam* action is filed, the action is placed under seal for at least sixty days, during which the United States may elect to intervene in the lawsuit. 31 U.S.C. § 3730(b)(2). The defendant is not

required to respond to any complaint filed under this § 3730(b) until twenty days after the complaint is unsealed and served upon the defendant, pursuant to Fed.R.Civ.P. 4. *Id.* § 3730(b)(3).

relator. Moreover, relators personally benefit if they prevail in a *qui tam* action, whereas officers of the government act solely on the public's behalf. On the other hand, the federalism concerns that sometimes prompt courts to interpret § 1442 narrowly are not present here. When a federal court deprives a state court of jurisdiction, it invades the state's sovereignty. Federal courts need have no such regard for arbitrators, who have exclusive "jurisdiction" over some disputes only by virtue of a federal statute.

Employees and employers often freely contract to submit their disputes to arbitration. Nevertheless, it is clear that it is usually the employer, not the employee, who insists on an arbitration clause ... But given the policies of the FCA, an employee who brings a claim against his employers as relator on behalf of the federal government should not be forced by unequal bargaining power to accept a forum demanded as a condition of employment by the very party on which he informed.

Thus while this Court does not find that the plain text of the whistleblower statute or the legislative history clearly demonstrate Congress's intention to except whistleblower retaliation claims from the Arbitration Act, it does find that a conflict exists between arbitration and the underlying purposes of the FCA. For that reason, the Court finds that Congress must have intended that whistleblower retaliation actions brought under 31 U.S.C. § 3730(h) be heard in a district court rather than before an arbitrator.

121 F.Supp.2d at 646–47.

KRI responds that the decision in *Mikes v. Strauss*, 889 F.Supp. 746 (S.D.N.Y. 1995), is more persuasive authority. In *Mikes*, the plaintiff, a pulmonologist, brought suit under the *qui tam* provisions of the FCA (31 U.S.C. § 3730(a)-(g)), claiming that her employer regularly misused spirometry and magnetic resonance imaging ("MRI") tests to overcharge patients, many of which received Medicare benefits. She further brought a claim for retaliatory discharge, in violation of § 3730(h). Her employer sought arbitration of the claims.

Addressing her *qui tam* claims and her retaliation claims separately, the district court first concluded that the *qui tam* claims were non-arbitrable, because (1) they were outside the scope of her employment contract, and (2) as a relator, the plaintiff stood as a private representative of the United States government. Turning to her retaliatory discharge claim, the court concluded that the plaintiff's § 3730(h) claim was subject to arbitration. It rejected the her argument that arbitration of her retaliation claim would be contrary to the purposes of the *qui tam* statutory scheme, reasoning:

While § 3730(h)'s protections do serve a role in deterring fraud against the government, that particular provision is primarily remedial in nature. We agree with plaintiff that, in the abstract, the existence of § 3730(h) may assure reluctant participants in fraudulent activities that their objections will not result in their being fired and thereby facilitates whistleblowing, a largely deterrent function. However, the retaliatory discharge suit itself has little, if any, effect on deterring the fraudulent activity. Instead, it is designed to provide a remedy to a relator unlawfully terminated due to her whistleblowing. Plaintiff has made no showing that arbitration will in any way inhibit this function of the statutory scheme. Moreover, plaintiff seeks only monetary damages, a remedy fully available under the instant arbitration agreement. The fact that plaintiff is still offered a forum to fully vindicate her

claim ensures that "the statute will continue to serve both its primary remedial and secondary deterrent functions." *Id.* at 756–57 (citations omitted). Accordingly, the Court compelled arbitration of the § 3730(h) claim.

The Court finds the holding in *Mikes* to be more persuasive. At the outset, the Court notes that neither the plain text of the whistleblower statute nor the FCA's legislative history clearly indicate that Congress intended for whistleblower claims to be exempt from arbitration agreements. In addition, Plaintiff herein has not brought a *qui tam* action against her employer for presenting false claims to the government. Rather, she has brought a FCA claim solely in the capacity of an employee who allegedly has been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [section § 3730]." 31 U.S.C. § 3730(h). In other words, her retaliation claim is not brought as a private representative of government, but in the capacity of an employee. This conclusion is bolstered by the fact that claims under § 3730(h) are not limited to relators. FCA retaliation claims may be brought by any employee who has had a role in the "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under [31 U.S.C. § 3730]." *Id.* Furthermore, the Supreme Court has enforced mandatory arbitration clauses in employment contracts for other alleged civil rights violations by employers. *See Gilmer, supra* (federal age discrimination claim was subject to mandatory arbitration agreement in employment contract). Absent a clear expression from Congress that arbitration agreements are inapplicable to claims under the FCA, the Court sees no reason to distinguish an FCA retaliation claim from other civil rights retaliation claims. Plaintiff is still accorded an adequate forum to present her § 3730(h) claim. Accordingly, the Court concludes that Plaintiff's § 3730(h) claim is subject to arbitration.

In summary, the Court concludes that Plaintiff has entered into an arbitration agreement with KRI, by virtue of her employment contract. By alleging that KRI and KRIC acted in concert and by raising claims against KRIC that are interdependent with her claims against KRI, KRIC may compel Plaintiff to arbitrate her claims against it, under an equitable estoppel theory. Each of Plaintiff's claims falls within the scope of the arbitration agreement, and her FCA retaliation claim is not exempt from the FAA's coverage. Accordingly, each of Plaintiff's claims is subject to arbitration. KRI and KRIC's Motion to Compel Arbitration (Doc. # 9–1) is SUSTAINED.

### D. *Stay Remaining Action*

*Fourth,* if the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. FAA § 3 provides that when the Court finds the issues arbitrable, "the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." The Supreme Court has stated that when the a dispute is subject to arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd,* 470 U.S. at 218, 105 S.Ct. 1238 (emphasis in original). The Sixth Circuit has permitted courts to dismiss cases, subject to reinstatement, where there "is

nothing left for the district court to do but execute judgment." *Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1276 (6th Cir.1990); *see also Stout v. Byrider*, 50 F.Supp.2d 733 (N.D.Ohio 1999) (dismissing case, subject to reinstatement, when all the issues would be decided during arbitration), *aff'd*, 228 F.3d 709 (6th Cir.2000), *cert. denied*, 531 U.S. 1148, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001).

### 1. *Claims Against KRI and KRIC*

All of Plaintiff's claims against KRI and KRIC are subject to arbitration, and the parties are directed to proceed to that forum. Because those claims will be resolved by arbitration, no further action is required of the Court as to these entities, except to enter judgment. Accordingly, KRI and KRIC's Motion to Dismiss the claims against them (Doc. # 9–2) is SUSTAINED, without prejudice and subject to reinstatement, if necessary, following the conclusion of arbitration.

### 2. *Claims Against KMC*

■ KMC has requested that the Court stay the action against it, pending arbitration of Plaintiff's claims against KRI and KRIC, on the ground that the result of the arbitration might render Plaintiff's claim against KMC moot (Doc. # 17). KMC further asserts that Ohio Rev.Code § 2711.02 requires a stay of this action, pending arbitration.

Plaintiff has brought claims against KMC for breach of implied contract (Count Ten), tortious interference with contractual relations (Count Eleven) and intentional infliction of emotional distress (Count Twelve). Ohio Rev.Code § 2711.02 provides, in pertinent part:

If any action is brought upon any issue referable to arbitration under an agree-

ment in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Ohio Rev.Code § 2711.02. Section 2711.02 has been interpreted to require the trial court to "to stay an action if the issues involved fall under a valid, enforceable arbitration agreement." *Poling v. American Suzuki Motor Corp.*, 2001 WL 1075720 (Ohio App. Sept. 13, 2001). However, that statutory provision does not mandate the issuance of a stay of proceedings for issues that are not subject to arbitration. *See, e.g., Kline v. Oak Ridge Builders, Inc.*, 102 Ohio App.3d 63, 656 N.E.2d 992 (Ohio App. 1995) (reversing stay of proceedings and order of arbitration proceedings for claims against individual defendants who did not agree to arbitrate); *Owens Flooring Co. v. Hummel Constr. Co.*, 140 Ohio App.3d 825, 749 N.E.2d 782 (2001)("Owens is not a party to the contract that contains the arbitration provision. In fact, Owens does not have any contract with Altercare. Therefore, Owens is not subject to the stay provisions of R.C. 2711.02."). Thus, the Court concludes that it is not required by § 2711.02 to stay Plaintiff's proceedings against KMC, on the ground that the claims against KRI and KRIC are subject to arbitration.

Applying the FAA, the question of whether to stay litigation of Plaintiff's claims against KMC, pending arbitration of her claims against KRI and KRIC, is left to the Court as a matter of its discretion to control its docket.[6] *Moses H. Cone*

---

**6.** Conversely, the Supreme Court has stated     that arbitration proceedings need not be

*Mem'l Hosp.*, 460 U.S. at 21, n. 23, 103 S.Ct. 927. Because KMC will not be involved in the arbitration process, the litigation against it would be needlessly protracted by staying the proceedings against it pending arbitration between Plaintiff and KRI and KRIC. Accordingly, the Court sees no reason to stay the litigation of these nonarbitrable claims. KMC's Motion to Stay Proceedings (Doc. # 17) is OVERRULED.

For the foregoing reasons, KRI and KRIC's Motions to Compel Arbitration (Doc. # 9–1) is SUSTAINED. Their Motion to Dismiss (Doc. # 9–2) is likewise SUSTAINED, subject to reinstatement following arbitration. KMC's Motion to Stay, pending the arbitration of Plaintiff's claims against KRI and KRIC (Doc. # 17), is OVERRULED.[7]

Counsel for Plaintiff and for Defendant Kettering Medical Center will take note that a telephone conference call will be held, beginning at 8:15 a.m., on Monday, March 25, 2002, in order to reset the trial date and other dates leading to the resolution of this litigation with those parties.

stayed pending resolution of the nonarbitrable claims out of concern for the preclusive effects of the arbitration. *Byrd*, 470 U.S. at 213, 221–224, 105 S.Ct. 1238.

7. Counsel for the Plaintiff should advise this Court, within ten (10) days from date, whether she wishes to seek the entry of final judgment, pursuant to Fed.R.Civ.P. 54(b), with regard to her claims against KRI and KRIC, which this Court has, herein, dismissed in deference to an arbitration proceeding.