**Pram NGUYEN, Plaintiff,**

v.

**CITY OF CLEVELAND,
et al., Defendants.**

**No. 1:99CV2990.**

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 21, 2000.

Alexander M. Spater, Spater, Schulte & Kolman, Columbus, OH, for Plaintiff.

Claudette Walcott, Cornell P. Carter, City Of Cleveland, Department Of Law, Alton L. Stephens, Jr., Michael Terence Cawley, Catherine A. Davis, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendants.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

This action arises under 31 U.S.C. § 3730(h), the whistleblower provision of the False Claims Act (the "FCA"). This Court has jurisdiction under 28 U.S.C. § 1331. There are now three motions before this Court. First is the motion of one of the defendants, Parsons Engineering Sciences, Inc. ("Parsons"), to dismiss the action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, or in the alternative, to stay the proceedings and to enforce the arbitration agreement between the plaintiff ("Nguyen") and Parsons (docket no. 6). Second is Parsons's motion to dismiss Nguyen's amended complaint (docket no. 18). Third, the City of Cleveland ("the City" or "Cleveland") has joined in Parsons's motions (docket no. 13) but has advanced no arguments of its own. For the reasons that follow, the defendants' motions are denied.

1. Parsons has argued that Nguyen's amended complaint should be stricken for failure to comply with Fed.R.Civ.P. 15. Rule 15(a) provides that "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party." In this case, the City served an answer to the complaint before Nguyen amended his complaint. Nguyen did not seek leave of the Court for his amendment. However, no leave was required, as the amendments affected Parsons, which had not filed a responsive pleading at the time Parsons amended its complaint. See 6 Wright & Miller, Fed. P. & P. § 1481 n. 2 and accompanying text. Therefore, the amended pleading is properly before the Court.

## 1. Facts

On a motion to dismiss for failure to state a claim, the Court treats the allegations of the complaint[1] as true and resolves every doubt in the plaintiff's favor. See Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 489 (6th Cir.1990). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See id. (citation omitted).

Nguyen was an employee of the City. His job involved air pollution control. At some point, he left his job with the City and began working for Parsons as an engineer. In August of 1998, he filed a qui tam action against the City under the FCA. The action alleged the City had misused federal funds earmarked for air pollution control. Pursuant to the Act, the action was placed under seal. The United States intervened in the action, and the case was unsealed in June of 1999.

Once the case was unsealed, the City and the media learned that Nguyen had filed the qui tam action. At the time, Parsons was the contractor on various projects for the City, and Nguyen was devoting all of his time to those projects. The City, having learned that Nguyen was the relator in the qui tam action, required Parsons to remove Nguyen from work on all City contracts. At the time it received the City's demand, Parsons knew that Nguyen had engaged in activities protected by the FCA. Parsons responded to the City's demand by removing Nguyen from all City contracts. This left Nguyen with

no work to perform, and as a result, he was terminated.

## 2. Discussion

### A. Motion To Compel Arbitration

Although Parsons frames its motion as a motion first and foremost for dismissal on the merits, and makes its request for a stay and enforcement of the arbitration agreement only in the alternative, the Court will consider the motion for enforcement of the agreement before it considers the motion for dismissal on the merits.

The Arbitration Act, 9 U.S.C. § 1 *et seq.*, is the starting place for analysis. The first question is whether the arbitration contract at issue in this case is within the scope of the Act. Section 2 of the Act provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Parsons has submitted an exhibit captioned "Employee Agreement / Parsons Employee Dispute Resolution Program" that bears Nguyen's signature[2] and that includes Nguyen's agreement "to be bound by the terms of the EDR Program during and after [his] employment with Parsons, for all claims arising out of [his] employment relationship with Parsons" except for certain disputes relating to confidentiality and intellectual property (Ex. to Def's Motion). This agreement is clearly a "written provision" in a contract involving "commerce" to settle controversies arising out of it by arbitration. Although it is an employment contract, it is not within the exception to the Arbitration Act for "contracts of employment of ... any ... class of workers engaged in foreign or interstate commerce" set forth in 9 U.S.C. § 1. *See Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 600–01 (6th Cir.1995).

Not all statutory claims are subject to compulsory arbitration under the Arbitration Act. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, in order to show that claims under the whistleblower provisions of the FCA are not subject to the Arbitration Act, Nguyen must show that Congress intended to preclude a waiver of a judicial forum under the FCA. *See id.* (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).

The question whether Congress intended the whistleblower provision of the FCA to preclude a waiver of a judicial forum is one of first impression.[3] The Court must, therefore, turn to the text of the statute, the legislative history, and a consideration of whether a conflict exists between arbitration and the underlying purposes of the whistleblower statute. *See Shearson/American Express, supra* at 227, 107 S.Ct. 2332.

The whistleblower protection provision of the FCA was enacted as part of the False Claims Amendments Act, Pub.L. No. 99–562, § 4, 100 Stat. 3153, 3157–58 (1986). The text of the statute does not discuss the applicability *vel non* of the Arbitration Act. Neither did the Senate Committee on the Judiciary, which reported the bill favorably

---

2. There is no dispute about the document's authenticity, as Nguyen himself attached it to the affidavit he submitted along with his brief.

3. The parties have cited no case on point. The only case the Court's research has disclosed that concerns the relationship between the Arbitration Act and the FCA, *United States ex rel. Mikes v. Straus,* 897 F.Supp. 805 (S.D.N.Y.1995), denied a motion to reconsider the court's earlier decision compelling arbitration of a plaintiff's retaliatory discharge claim under the whistleblower statute, but the court did not consider the applicability of the Arbitration Act. Rather, it held that it did not need to reach the merits of the plaintiff's claim that the Arbitration Act did not apply, because it decided the case under New York arbitration law. *See id.* at 807.

to the Senate, mention the relationship between the Arbitration Act and the False Claims Act in its report. *See* S.Rep. No. 99–345, at 34–35 (1986). An examination of the Congressional Record also reveals no consideration of the issue.

Nguyen points to two aspects of the statute that, he argues, support the conclusion that Congress intended to except whistleblower retaliation claims from the Arbitration Act. First, he claims that the statute grants the district courts exclusive jurisdiction, thus indicating Congress's intention to provide a federal forum as opposed to a state forum. Second, he claims that because a whistleblower claims he was retaliated against for assisting the government in recouping public money, there is a particularly strong federal interest in ensuring that the whistleblower is protected, and thus an interest in allowing him to bring his case in federal court.

■ It is not clear from the text of the statute that federal jurisdiction of whistleblower retaliation claims *is* exclusive of the states, as Nguyen suggests. Jurisdiction is presumably concurrent. *See Tafflin v. Levitt*, 493 U.S. 455, 459, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). The presumption may be rebutted "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). Here, there is no explicit statutory directive and, despite Nguyen's arguments to the contrary, no unmistakable implication from legislative history.[4] Nor does the Court find a clear incompatibility between state jurisdiction and federal jurisdiction. In any case, although the Supreme Court has restated the rule of *Gulf Offshore, see, e.g., Tafflin v. Levitt*, 493 U.S. 455, 459–60, 110

S.Ct. 792, 107 L.Ed.2d 887 (1990), the only cases in which the Supreme Court has found implied exclusive jurisdiction are the Sherman Act and the Clayton Act, "where the full extent of [the Court's] analysis was the less than compelling statement that provisions giving the right to sue in United States District Court show that [the right] is to be exercised *only* in a court of the United States." *Id.* at 470–71, 110 S.Ct. 792 (Scalia, J., concurring) (citations and internal quotation marks omitted). Therefore, this Court finds that its jurisdiction over actions brought under § 3730(h) is not exclusive of the state courts.

However, Nguyen's second argument raises the question whether there is an incompatibility between compulsory arbitration and federal jurisdiction. This argument is persuasive. Nguyen was originally the relator in a *qui tam* action brought against the City of Cleveland. In a *qui tam* action, the relator sues on behalf of the government as well as himself. He is not an officer or employee of the government, but he acts on its behalf. To that extent, the policies that favor district court jurisdiction are like the policies behind 28 U.S.C. § 1442(a), the statute that permits removal from state court to federal court of cases in which an officer of the United States is a defendant: the protection of agents of the government when they do the government's business. To be sure, the policy applies imperfectly to *qui tam* relators: where the government necessarily acts through its officers, *see Tennessee v. Davis*, 100 U.S. (10 Otto) 257, 262, 25 L.Ed. 648 (1879), the government may bring suits on its own behalf under the False Claims Act. It need not act through a relator. Moreover, relators personally benefit if they prevail in a *qui tam* action, whereas officers of the government act solely on the public's behalf. On the other hand, the federalism concerns that some-

---

4. Nguyen points to a statement from the Senate Judiciary Committee's report: "Jurisdiction for any actions under [§ 3730(h)] of the False Claims Act shall be in Federal district court." S.Rep. No. 99–345, *supra* at 35.

This piece of legislative history is inconclusive; it merely provides for district court jurisdiction without stating that the jurisdiction is exclusive.

times prompt courts to interpret § 1442 narrowly are not present here. When a federal court deprives a state court of jurisdiction, it invades the state's sovereignty. Federal courts need have no such regard for arbitrators, who have exclusive "jurisdiction" over some disputes only by virtue of a federal statute.

Employees and employers often freely contract to submit their disputes to arbitration. Nevertheless, it is clear that it is usually the employer, not the employee, who insists on an arbitration clause. In this case, for example, the letter in which Parsons extended its offer of employment to Nguyen reads: "By accepting employment with us, you agree to resolve all legal claims against Parsons as provided by [the Employee Dispute Resolution Program]" (Def's Rep. Br., Ex. A). "[M]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are *never* enforceable in the employment context." *Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647 (emphasis added). But given the policies of the FCA, an employee who brings a claim against his employers as relator on behalf of the federal government should not be forced by unequal bargaining power to accept a forum demanded as a condition of employment by the very party on which he informed.

■ Thus while this Court does not find that the plain text of the whistleblower statute or the legislative history clearly demonstrate Congress's intention to except whistleblower retaliation claims from the Arbitration Act, it does find that a conflict exists between arbitration and the underlying purposes of the FCA. *See Shearson/American Express, supra* at 227, 107 S.Ct. 2332. For that reason, the Court finds that Congress must have intended that whistleblower retaliation actions brought under 31 U.S.C. § 3730(h) be heard in a district court rather than before an arbitrator. The Court recognizes its disagreement with the holding of *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir.1998), a whistleblower case brought

under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 [FIRREA], 12 U.S.C. § 1831j. In this Court's opinion, the *Oldroyd* court underestimated the conflict between arbitration and the purposes of laws such as the False Claims Act or FIRREA, which are, *Oldroyd* to the contrary, distinguishable from the Age Discrimination in Employment Act, ERISA, and the Sherman Act insofar as the plaintiff in a False Claims or FIRREA retaliation action has provided information to the government and acted on its behalf. Accordingly, the Court denies Parsons's motion to stay the action and to enforce the arbitration agreement.

**B.  Motion To Dismiss For Failure To State A Claim.**

Parsons moves to dismiss the case against it for failure to state a claim. Although the parties have each submitted exhibits and affidavits with their briefs, the Court, pursuant to Fed.R.Civ.P. 12(b), will disregard such exhibits and decide Parsons's motion on the pleadings rather than treat it as a motion for summary judgment.

Section 3730(h), the section under which Nguyen brings his claim, provides, in pertinent part:

> Any employee who is discharged ... by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section ... shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). Parsons's argument, in effect, is that the statute permits recovery only if: (1) the employee was employed by the defendant at the time he took action under the Act; and (2) the defendant in the retaliation action was also the party against which the discharged employee took action under the False Claims Act.

*(i.) Must Parsons Have Employed Nguyen At The Time He Took Protected Action?*

■ It is clear that the statute extends to employers other than the employer at the time of the protected action who discriminate against employees. In *United States ex rel. Kent v. Aiello*, 836 F.Supp. 720 (E.D.Cal.1993), the plaintiff, Kent, was employed by Aiello and another to manage an apartment complex. In the course of her employment, Kent discovered that her employer had defrauded the Farmers Home Administration, a government agency that subsidized the complex. In 1990, Aiello turned the management of the complex over to the CBM Group, Inc., and Kent agreed to work for CBM. After learning that Kent had made her allegations of fraud before a grand jury, CBM fired her. Kent sued Aiello under § 3730(h), alleging that Aiello had caused CBM to fire her.[5] Aiello moved to dismiss for failure to state a claim, on the grounds that because CBM fired Kent, he (Aiello) could not be liable. The court, on these facts, denied the motion to dismiss. The court held:

> [P]roperly read, [§ 3730(h)] defines the class of plaintiffs who may bring suit ... rather than against whom suit may be brought. That is to say that while it is true that under the statute a plaintiff must have been an employee, the statute says nothing about the class of defendants. Thus the defendants' reliance on section 3730(h) as requiring that defendants must have been plaintiff's employer is unfounded.

*Kent, supra* at 724. The scope of the holding of *Kent* was clarified in *Mruz v. Caring, Inc.*, 991 F.Supp. 701, 709–10 (D.N.J.1998), where the court held that the reasoning of *Kent* did not sweep within the statute defendants who had never had an employment relationship with the plaintiff. Of course, in the present case, Nguyen was employed at different times by both the City and Parsons. Thus *Mruz* suggests that *Kent* applies. Therefore, the Court holds that § 3730(h) permits suits against an employer even if it did not employ the plaintiff at the time he took action protected by the FCA.

*(ii.) Must Nguyen Have Proceeded Under The FCA Against Parsons Rather Than Against A Third Party?*

Parsons next argues that § 3730(h) does not permit a suit against an employer when the protected action the plaintiff took under the FCA alleged that another party had violated the Act. The text of the statute itself does not require this conclusion. The statute does *not* read: "Any employee who is discharged by his or her employer because of lawful acts done by the employee ... in furtherance of an action *against the employer* under this section ..." Nor does Parsons's argument give the statute its most sensible construction. Suppose that plaintiff A.B. was employed by X Corp. and filed a *qui tam* action against Y Corp. An executive with Y Corp. telephones his friend and counterpart at X Corp., explains the situation, and asks him to fire A.B. for making trouble for Y Corp. Suppose further that the executive at X Corp. agrees. A.B. has been fired because he exercised his rights under the False Claims Act. Yet under Parsons's reading of the statute, he is not entitled to relief from X Corp., even though X Corp. discharged him "because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the False Claims Act]."

If Parsons's reading were correct, then in situations such as this, in which an employee of a contractor brings a *qui tam* action against the contractor's client, and the contractor, acting as the client's agent or proxy, discriminated against the employee, the employee would have no remedy against the contractor. Moreover, un-

---

**5.** The complaint alleged that CBM was Aiello's alter ego, but the court's opinion in *Kent* does not turn on the closeness of the relationship between the two.

der the holding of *Mruz, supra,* he would have no remedy against the client unless he had at one time had an employment relationship with it. Surely, given Congress's intent to encourage employees to bring *qui tam* actions by protecting them from retaliation, Congress did not mean to deny relief to relators in such circumstances.

Parsons directs the Court's attention to the three elements to which courts have looked in deciding whether plaintiffs under § 3730(h) have made out their prima facie case: (1) the employee engaged in conduct protected by the Act; (2) the employer knew that the employee was engaging in protected conduct; and (3) the employer retaliated or discriminated against the employee because of his or her protected conduct. *See, e.g., Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 866 (4th Cir.1999); *United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 736 (D.C.Cir.1998); *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.,* 123 F.3d 935, 944 (6th Cir. 1997); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir.1996). Parsons argues that the word "retaliation" in the third element of the test indicates that the employer must act in response to action the employee took against it, not against a third party. Some of the courts that have interpreted the statute have used the word "discriminate" rather than "retaliate," *see, e.g., Hopper, supra* at 1269, and the former does not have the tit-for-tat connotation of the latter. Indeed, the retaliation need only be motivated "in part" by the employee's protected activity. *See Yesudian, supra* at 736. Thus the word "retaliate" is not dispositive.

This Court holds that § 3730(h) permits a suit against an employer if (1) the employee engaged in conduct protected by the False Claims Act; (2) the employer knew that the employee was engaging in the protected conduct; and (3) the employer discriminated against the employee at least in part because the employee engaged in the protected activity. The causation requirement in the third prong of this test is sufficiently weak that it reaches an employer who discriminates against an employee, at the behest of or on behalf of another, when it is the other that seeks to retaliate against the employee for protected conduct.

For the foregoing reasons, Parsons's motion to dismiss for failure to state a claim must be denied.

### 3. The City's Motions.

As the Court has denied both of Parsons' motions, it also denies the City's motion to join in Parsons's motions as moot.

### 4. Conclusion

For the foregoing reasons, the defendants' motions (docket nos. 6, 13, and 18) are denied. Parsons shall serve its answer to the amended complaint as required by the Rules of Civil Procedure.

IT IS SO ORDERED.