UNITED STATES of America ex rel.
Frank M. CASSADAY, Plaintiff,

v.

KBR, INC., Kellogg, Brown, & Root Services, Inc., and Service Employees International, Inc., Defendants.

Civil Action No. H–07–1485.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 16, 2008.

Mary Michelle Zingaro, United States Attorney's Office, Houston, TX, for United States of America.

Bernard J. DiMuro, Michael Lieberman, Stephen J. Stine, DiMuro Ginsberg, PC,

Alexandria, VA, Sarah Brashears–Macatee, Alan Grayson, W. Clifton Holmes, Victor Kubli, Jesseleyn A. Radack, Grayson & Kubli, PC, Vienna, VA, Philip Harlan Hilder, Hilder & Associates, PC, Houston, TX, for Frank M. Cassaday.

Alden L. Atkins, John M. Faust, Vinson & Elkins, LLP, Washington, DC, Kathleen A. Gallagher, Vinson & Elkins, LLP, Houston, TX, Vanessa M. Griffith, Vinson & Elkins LLP, Dallas, TX, for KBR, Inc., Kellogg, Brown & Root Services, Inc., and Service Employees International, Inc.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Defendants' Motion to Compel Arbitration, to Sever, and to Stay Arbitrable Claims. Having considered the motion, submissions, and applicable law, the Court determines Defendants' motion should be granted.

## BACKGROUND

In this *qui tam* lawsuit, Plaintiff–Relator Frank M. Cassaday ("Cassaday"), a former employee of Service Employees International, Inc. ("SEII"), asserts violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Defendants KBR, Inc., Kellogg, Brown & Root, Inc., and SEII (collectively, "KBR").[1] Cassaday's claims arise out of KBR's performance under LOGCAP III, a contract between the United States of America and KBR, wherein KBR agreed to provide support services for the U.S. Army.[2] From July 3, 2004 until May 24, 2005, KBR assigned Cassaday, a refrigeration technician, to maintain and repair refrigeration equipment and ice machines at two facilities in Iraq. According to Cassaday, he observed fraudulent activity giving rise to KBR's submission of false claims and statements to the U.S. Government for its LOGCAP III costs. Cassaday avers that after he spoke out against the alleged fraud, KBR retaliated against him, leading to his constructive discharge. Cassaday filed the instant lawsuit under seal on April 25, 2007. After the United States declined to intervene on January 7, 2008, the Court unsealed the complaint.

Cassaday asserts three FCA claims against KBR: (1) a "false claims" cause of action pursuant to 31 U.S.C. § 3729(a)(1); (2) a "false statements" cause of action pursuant to 31 U.S.C. § 3729(a)(2); and (3) a retaliation cause of action pursuant to 31 U.S.C. § 3730(h). The pending motion before the Court focuses solely on Count III, the retaliation cause of action.[3] In Count

1. Under the FCA, persons, known as relators, are authorized to bring *qui tam* actions alleging violation of the FCA on behalf of the United States of America and for themselves. 31 U.S.C. § 3730(b)(1). The Latin phrase *"qui tam"* is short for *"qui tam pro domini rege quam pro se ipso in hac parte sequitur,"* meaning "who pursues this action on our Lord the King's behalf as well as his own." *Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 769 n. 1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). A *qui tam* complaint is filed under seal so that the United States may investigate the complaint's allegations. 31 U.S.C. § 3730(b)(2). After investigating, the United States has two options: it may pursue the action in its own right or decline to intervene. *Id.* § 3730(b)(4). If the

United States declines to intervene, however, the relator has the right to conduct the action. *Id.* § 3730(b)(4)(B). If a *qui tam* action is successful, the relator receives a percentage of any proceeds or settlement. *Id.* §§ 3730(d)(1)(2). The FCA also creates a retaliation cause of action for a person who is discriminated against or harassed for engaging in conduct protected under the FCA. *Id.* § 3730(h).

2. LOGCAP stands for "Logistics Civil Augmentation Program."

3. By separate motion, KBR moves the Court to dismiss Cassaday's false claims and false statements causes of action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

III of his complaint, Cassaday alleges KBR "discharged, suspended, threatened, harassed, and in other manners discriminated against [him] in the terms and conditions of employment" in retaliation for engaging in conduct protected by the FCA. KBR now moves to compel arbitration of Cassaday's FCA retaliation claim pursuant to the terms of his employment agreement with KBR, which is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* According to KBR, Cassaday and his employer, SEII, a subsidiary of KBR, entered into a valid, enforceable arbitration agreement that encompasses Cassaday's FCA retaliation claim against all the defendants.[4] Cassaday opposes arbitration, arguing: (1) the agreement is invalid because it is procedurally and substantively unconscionable; and (2) Congress did not intend for FCA retaliation claims to be arbitrable. The Court addresses each argument in turn.

### LAW & ANALYSIS

██ Under the FAA, an agreement to arbitrate that is valid under general principles of state contract law and involves interstate commerce is "valid, irrevocable, and enforceable."[5] 9 U.S.C. § 2. Once a party makes an agreement to arbitrate, that party is held to arbitration unless Congress intended to preclude a waiver of judicial remedies for statutory rights at issue. *Garrett v. Circuit City Stores, Inc.,* 449 F.3d 672, 674 (5th Cir.2006). The United States Court of Appeals for the Fifth Circuit has reinforced the strong federal policy favoring arbitration. *Id.* In this case, Cassaday bears the burden of showing that the dispute is not arbitrable. *Am.*

*Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 539 (5th Cir.2003) (explaining that the party resisting arbitration bears the burden of showing a dispute is not arbitrable under Section 4 of the FAA).

██ Although federal policy favors arbitration, arbitration is a matter of contract, and a party cannot be required to arbitrate any dispute that he or she has not agreed to arbitrate. *Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir.2006). Whether a party agreed to arbitrate is to be decided by a court, not an arbitrator. *Id.* However, where the contract contains an arbitration clause, there is a presumption of arbitrability. *Id.* Based upon this presumption, ambiguities regarding whether a dispute falls within the scope of an arbitration agreement are resolved in favor of arbitration. *Id.*

██ A two-step analysis is used to determine whether a party may be compelled to arbitrate a dispute. *Sherer v. Green Tree Serv. L.L.C.,* 548 F.3d 379, 380–81 (5th Cir.2008). First, a court must determine whether the parties agreed to arbitrate the dispute. *JP Morgan Chase & Co. v. Conegie,* 492 F.3d 596, 598 (5th Cir.2007). More specifically, a court must ascertain whether a valid agreement to arbitrate the claims exists, and if so, whether the dispute in question falls within the scope of that arbitration agreement. *Id.* Second, a court must determine "if any federal statute or policy renders the claims nonarbitrable." *Id.* (quoting *Wash. Mut. Fin. Group, L.L.C. v. Bailey,* 364 F.3d 260, 263 (5th Cir.2004)). With these guiding principles in mind, the Court must determine whether Cassaday's allegations of re-

---

4. The Court notes, and Cassaday does not dispute, that the arbitration agreement between Cassaday and SEII expressly provides that parent, subsidiary, affiliate, or associated corporations, such as Defendants KBR, Inc. and Kellogg, Brown & Root, Inc., are third party beneficiaries to the arbitration agree-

ment. In other words, the arbitration agreement encompasses all the defendants in this lawsuit.

5. The parties do not dispute, and the Court agrees, that the arbitration agreement at issue involves interstate commerce.

taliation under the FCA should be severed and arbitrated.

## A. WHETHER THE ARBITRATION AGREEMENT IS UNCONSCIONABLE

In a lengthy footnote, Cassaday argues that the arbitration agreement at issue is not valid because it is procedurally and substantively unconscionable.[6] When SEII hired Cassaday in July 2004, he signed an employment agreement that outlined the terms and conditions of his employment. Clause 26 of the employment agreement, entitled "Claims/Disputes," provides:

> In consideration of your employment, you agree that your assignment, job or compensation can be terminated with our without cause, with or without notice at any time at your option or at Employer's option. You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.
>
> It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agents are third party beneficiaries to this provision and are entitled to invoke, enforce, and participate in arbitration pursuant to this provision.
>
> [Last paragraph omitted.]

Cassaday's initials appear below Clause 26. Cassaday also signed a "New Hire/Rehire" form that contained a provision relating to arbitration:

> In consideration of my employment, I agree that my assignment, job, or compensation can be terminated with or

---

**6.** The Court notes Cassaday does not dispute he signed an employment agreement. Likewise, he does not dispute the agreement to arbitrate encompasses his retaliation claim. *See Sherer*, 548 F.3d at 380–81 (noting that whether the dispute in question falls within the scope of the arbitration agreement is half of the inquiry in ascertaining whether the parties agreed to arbitrate a dispute). Regardless, even if Cassaday argued that the agreement at issue did not encompass his retaliation claim, the Court would find otherwise. This is because Cassaday agreed to arbitration of "any and all claims that [he] might have against [KBR] related to [his] employment, including [his] termination." Cassaday's complaint alleges that he was "discharged, suspended, threatened, harassed, and in other manners discriminated against in the terms and conditions of employment by his employer because of the lawful acts done by [Cassaday] ... in furtherance of a False Claims Act action...." Because Cassaday's claims relate to his employment with and/or termination from KBR, the Court finds they fall within the scope of the arbitration agreement. *See Barker v. Halliburton Co.*, 541 F.Supp.2d 879, 887 (S.D.Tex.2008) (noting that the Fifth Circuit has held that arbitration clauses purporting to cover all disputes "related to" the employment agreement should be interpreted broadly to cover "all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); *see also Orcutt v. Kettering Radiologists, Inc.*, 199 F.Supp.2d 746, 753 (S.D.Ohio 2002) (holding that the plaintiff's factual allegations in support of her FCA retaliation claim—that she suffered discrimination, harassment, retaliation, and wrongful termination by the defendant during the course of her employment—"related to her employment agreement" with the defendant, and, therefore, fell within the scope of the arbitration provision).

without cause, with or without notice at any time at the option of the Company or myself. I also agree that I will be bound by and accept as a condition of my employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION, AND ANY AND ALL PERSONAL INJURY CLAIMS, ARISING IN THE WORKPLACE, I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COMPANY, BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF TO THE COURT SYSTEM. I also agree that any employment contract or any other agreement which is inconsistent with the provisions of this notice or Dispute Resolution Program is absolutely void unless entered into in writing by the Chief Executive Officer.

KBR contends that the parties' arbitration agreement is not unconscionable under general principles of Texas contract law and, therefore, valid.[7] Thus, the Court must determine whether Cassaday has met his burden to establish the agreement is procedurally and/or substantively unconscionable.[8] *See Am. Heritage Life Ins. Co.,* 321 F.3d at 539; *In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex.2002).

### 1. Whether the Agreement is Procedurally Unconscionable

According to Cassaday, the circumstances surrounding his signing the arbitration agreement were procedurally unconscionable because signing the SEII employment agreement was a mandatory pre-condition to his employment with KBR, and he did not have the opportunity to negotiate the terms of the SEII agreement or the KBR Dispute Resolution Program. KBR avers Cassaday's arguments are foreclosed by *In re Halliburton Co.,* 80 S.W.3d 566 (Tex.2002).[9]

---

**7.** The Halliburton Dispute Resolution Program, which is incorporated by reference in both Clause 26 of the employment agreement and the New Hire/Rehire form, is now known as the KBR Dispute Resolution Program.

**8.** Although the FAA applies to the arbitration clause, the employment agreement between Cassaday and KBR, which Cassaday signed in Texas, is governed and construed by Texas law. Cassaday does not argue that another state's law should apply.

**9.** KBR argues that Cassaday's claim of procedural unconscionability should be decided by the arbitrator and not this Court because his claims relate to the contract as a whole rather than specifically to the arbitration clause. *See Perry Homes v. Cull,* 258 S.W.3d 580, 589 (Tex.2008) (explaining that courts must decide defenses that apply solely to the arbitration clause, but arbitrators must decide defenses that apply to the whole contract). To the extent Cassaday argues the entire employment agreement is procedurally unconsciona-

ble, then the Court agrees that question must be left to an arbitrator. *See id.* Thus, the Court decides only whether the arbitration clause is unconscionable. *See Overstreet v. Contigroup Cos.,* 462 F.3d 409, 411 n. 1 (5th Cir.2006) (declining to address whether a contract as a whole was unconscionable because "federal courts are limited to reviewing the arbitration clause itself").

Likewise, to the extent Cassaday argues the arbitration provision is unconscionable because KBR did not give him a copy of the KBR Dispute Resolution Program rules, which are incorporated by reference in both Clause 26 of the employment agreement and the New Hire/Rehire form, prior to signing the employment agreement, the Court finds this argument is unavailing and without merit. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 781 (Tex.2006) ("A contractual term is not rendered invalid merely because it exists in a document incorporated by reference ... arbitration-related language is no exception to this rule."); *In re Raymond*

Procedural unconscionability "refers to the circumstances surrounding the adoption of the arbitration agreement." *In re Halliburton Co.*, 80 S.W.3d at 571. The Texas Supreme Court has previously held that an arbitration provision is not procedurally unconscionable where there is gross disparity in bargaining power between the parties because an employee has no opportunity to negotiate the agreement's terms. *See id.* at 572 (noting that an employer may make "a 'take it or leave it' offer to its at-will employees"). In other words, "[b]ecause an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms." *Id.*; *Smith v. H.E. Butt Grocery Co.*, 18 S.W.3d 910, 912 (Tex.App.-Beaumont 2000, pet. denied) (rejecting the argument that an arbitration provision is unconscionable merely because the parties did not negotiate its terms).

In the instant case, Paragraph 1 of Cassaday's employment agreement, entitled "General Terms and Conditions," provides that his employment with KBR was at-will.[10] Because KBR had the right under Texas law to discharge Cassaday, an at-will employee, and because KBR could make just such a "take it or leave it" offer to Cassaday, the Court finds it was not procedurally unconscionable for KBR to have premised Cassaday's employment on his agreement to terms that were not negotiated. *See id.*

## 2. *Whether the Agreement is Substantively Unconscionable*

Cassaday next argues the arbitration agreement is substantively unconscionable because the KBR Dispute Resolution Program provides that "the arbitrator shall maintain the privacy of the proceedings to the extent permitted by law." According to Cassaday, private arbitration of his FCA retaliation claim will deprive him of "the right to a public airing of his FCA retaliation grievance against [KBR]."

Substantive unconscionability refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d at 571. The substantive unconscionability inquiry looks at the arbitration provision itself and asks whether "given the parties' general commercial background[s] and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001).

For three reasons, the Court declines to find that the provision calling for privacy is unconscionable. First, although Cassaday avers that a "public airing of his grievances in federal court ... is guaranteed under the False Claims Act," he points to no legal authority to support his assertion that the FCA *guarantees* a public hearing/trial of his retaliation claim. Second, even if the FCA did confer the right to a public hearing, which the Court finds Cassaday has failed to

---

*James & Assocs.*, 196 S.W.3d 311, 320 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (finding account holders bound by arbitration provisions in client agreement even though they never received a copy).

10. The provision states: "You may terminate your employment at any time, subject to loss

of compensation, if any, as specified herein, and Employer may likewise terminate your employment at any time, for any reason, including for its sole convenience." Likewise, the arbitration clause itself reiterates Cassaday's at-will employment status. Neither party disputes, and the Court agrees, that Cassaday was an at-will employee of KBR.

show, "it would be a derivative right of the right to a federal forum which [he] waived as part of [his] employment agreement." *Barker*, 541 F.Supp.2d at 886. The employment agreement provides, in relevant part, that "any and all claims that [Cassaday] might have against [KBR] related to [his] employment ... must be submitted to binding arbitration *instead of the court system.*" (emphasis added). Texas law presumes that Cassaday read the agreement. *See id.* (citing *Emerald Tex., Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex.App.-Houston [1st Dist.] 1996, no writ)). By signing the agreement, Cassaday waived any rights associated with a public trial in the court system. Third, the challenged provision states that "the arbitrator shall maintain the privacy of the proceedings *to the extent permitted by law.*" (emphasis added). Thus, assuming, *arguendo,* Cassaday is correct that the FCA guarantees his right to a "public airing," the agreement allows for it.

Finally, the provision regarding arbitration applies to both parties equally, protects Cassaday's substantive legal and statutory rights, and does not curtail available remedies. For example, the KBR Dispute Resolution Program provides that the arbitrator "shall not have the authority either to abridge or enlarge the substantive rights available under applicable law." Likewise, Cassaday fails to explain how private arbitration favors KBR to the legal detriment of Cassaday and employees like him. Because there is nothing inherently more beneficial to one party than the other that the proceedings be kept confidential, and Cassaday stands to be deprived of no substantive or statutory rights, the Court finds the provision is not one-sided. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 757; *McBride v. Halliburton Co.,* Civ. A. No. 05–00828(HHK), 2007 WL 1954441, at *5 n. 11 (D.D.C. July 5, 2007) (noting that, after reviewing the terms of the KBR Dis-

pute Resolution Program at issue in this case, there was "no immediately apparent reason to doubt that the program provides a forum in which [the plaintiff's] statutory rights under FCA § 3730(h) may be vindicated in full").

In sum, the Court finds Cassaday has not met his burden to show that the arbitration clause is invalid on grounds of procedural or substantive unconscionability. Having ascertained that the arbitration agreement is valid, the Court turns to the second step of the inquiry: whether any federal statute or policy renders the claims nonarbitrable. *See JP Morgan Chase & Co.,* 492 F.3d at 598.

**B. WHETHER FCA RETALIATION CLAIMS ARE ARBITRABLE**

Cassaday next argues that his FCA retaliation claim is not subject to arbitration because Congress intended to preclude arbitration of FCA retaliation claims. Specifically, Cassaday contends "[t]hat by steering potential relators' [retaliation] claims into the pathway of private arbitration, government contractors are allowed, in some instances, to effectively immunize themselves against relator-initiated claims of [FCA] violations." According to Cassaday, the FCA's text, legislative history, and the "inherent conflict" that exists between arbitration and the FCA's underlying purposes evinces Congress's intent to preclude arbitration of FCA retaliation claims. Such an intention may be evinced by the text of the statute, its legislative history, or an inherent conflict between arbitration and the statute's underlying purposes. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Thus, the Court must determine whether Cassaday has met his burden to establish Congress intended to preclude arbitration of FCA retaliation claims. *See Am. Heri-*

*tage Life Ins. Co.,* 321 F.3d at 539; *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

### 1. *Text of the FCA*

Cassaday first asserts that the text of the FCA compels the conclusion that FCA retaliation claims are not subject to arbitration. Cassaday argues that arbitration of FCA retaliation claims conflicts with the FCA's "public disclosure" provision, creates "insoluble practical difficulties," and does "violence to the False Claims Act as a whole." In response, KBR contends that the FCA's text does not manifest any congressional intent to preclude arbitration, the public disclosure provision is not implicated, and Cassaday's arguments relating to practical difficulties are hypothetical, exaggerated, and unrealistic as applied to the facts of this case.

Section 3730(h) of the FCA provides, in pertinent part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.... An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h). This section is distinct from other FCA provisions "in that claims thereunder are not brought as *qui tam* actions but rather on behalf of the plaintiff." *McBride,* 2007 WL 1954441, at *4 (noting that the "government has no

monetary interest in [FCA retaliation] claims and is not a party thereto").

 At the outset, the Court rejects Cassaday's argument that the FCA's text "compels" the conclusion that FCA retaliation claims are not subject to arbitration. Cassaday ostensibly argues that because Section 3730(h) provides that an "employee may bring an action in the appropriate district court of the United States," Congress therefore intended that FCA retaliation claims be confined to a federal court forum. This argument ignores court opinions finding no congressional intent in the FCA's text to preclude arbitration of FCA retaliation claims. *See McBride,* 2007 WL 1954441, at *4 (noting that other courts have found no congressional intent in the statute to preclude arbitration of FCA retaliation claims); *Orcutt,* 199 F.Supp.2d at 757 (explaining that "the plain text of the whistleblower statute" does not "clearly indicate that Congress intended for whistleblower claims to be exempt from arbitration agreements"); *Nguyen v. City of Cleveland,* 121 F.Supp.2d 643, 647 (N.D.Ohio 2000) (noting that "there is no explicit statutory directive" indicating Congress's intent to preclude arbitration of FCA retaliation claims); *Mikes v. Strauss,* 889 F.Supp. 746, 755 (S.D.N.Y.1995) (observing that Section 3730(h)'s express language does not mention arbitration).

Moreover, Cassaday's argument fails to reconcile cases holding that statutory causes of action are arbitrable notwithstanding Congress's decision to vest jurisdiction of such claims in federal district court. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding Sherman Act claims are subject to arbitration even though the jurisdiction provision of the Sherman Act provides that suit may be brought "in any district court of the United States"); *Rodriguez de Qui-*

*jas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (finding the text of the Securities Act of 1933, which provides for concurrent state and federal court jurisdiction, and the Securities Act of 1934, which provides for exclusive federal court jurisdiction, did not preclude arbitration); *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 120 (2d Cir.1991) (holding ERISA claims are arbitrable notwithstanding that ERISA provides for exclusive federal court jurisdiction). Accordingly, the Court rejects Cassaday's argument that because the FCA provides that an employee may assert a retaliation claim in federal district court, such language is—in and of itself—evidence of Congress's intent to preclude arbitration.

█ Next, Cassaday asserts that arbitration of FCA retaliation claims "creates an insoluble incompatibility" with the FCA's public disclosure provision. Cassaday argues that the disclosure of a FCA *qui tam* violation, which relates to false statements and/or false claims under Section 3729, during the course of an FCA retaliation arbitration proceeding constitutes a public disclosure, thereby depriving federal courts of jurisdiction over Section 3729 *qui tam* claims stemming from the same allegations. *See* 31 U.S.C. § 3729(a) (imposing liability on any person who knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government" and "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid."); 31 U.S.C. § 3730(e)(4)(A) (providing that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions ... unless the ... person bringing the action is an original source of the information"). According to Cassaday, "by steering potential relators into the pathway of private arbitration as to [FCA retaliation claims], government contractors such as [KBR] can, in some instances, effectively immunize themselves against relator-initiated claims of Section 3729 violations."

KBR concedes that a Section 3729 *qui tam* claim based on prior public disclosures of the relevant allegations is barred unless the plaintiff is the original source of the underlying information, and it also acknowledges that disclosures made during the course of arbitration could constitute a public disclosure. However, KBR argues, and the Court agrees, that Cassaday's concerns are not unique to arbitration. In other words, a disclosure—whether it be made in arbitration or in federal court—prior to the filing of a *qui tam* claim under Section 3729 could constitute a public disclosure. KBR also avers that the public disclosure bar is not implicated unless a disclosure is made *before* the institution of a *qui tam* claim, and the *qui tam* claim is "based upon" that disclosure. *See* 31 U.S.C. § 3730(e)(4)(A). Thus, where a FCA retaliation claim is filed contemporaneously with or after the *qui tam* claim, the public disclosure jurisdictional bar is simply not implicated. In other words, a plaintiff wishing to assert a FCA retaliation claim may avoid the public disclosure bar by filing the retaliation claim with or after the *qui tam* claim. Indeed, the Court notes Cassaday himself was able to avoid the public disclosure pitfall of which he now complains by filing his Section 3730(h) retaliation claim with his Section 3729 *qui tam* claims. Accordingly, because there is no statutory requirement that a FCA retaliation claim be filed prior to a Section 3729 *qui tam* claim, and because the public disclosure provision is not implicated where a retaliation claim is filed with or after a Section 3729 *qui tam* claim, the Court finds that arbitration of FCA retaliation claims does not create an insoluble incompatibility, as Cassaday claims, with the public disclosure provision.

■ Cassaday next argues that arbitration of FCA retaliation claims creates "insoluble practical difficulties" in relation to sealed *qui tam* claims. According to Cassaday, arbitration of a FCA retaliation claim while a *qui tam* case remains under seal, as required by 31 U.S.C. § 3730(b)(2), could violate the seal requirement and alert the defendant to the existence of a pending *qui tam* suit. For example, Cassaday posits that if a plaintiff-relator asserts a FCA *qui tam* claim and retaliation claim together, and then files for arbitration of the retaliation claim one month later while the *qui tam* claim is still under seal, the plaintiff-relator is in the precarious position of placing the defendant on definitive notice of the pending FCA *qui tam* suit and violating Section 3730(b)(2)'s seal requirement if the arbitrator asks the former employee whether he has other claims pending against his former employer. Thus, according to Cassaday, meaningful fact-finding in the arbitration could not go forward so long as the FCA *qui tam* case remains under seal.

Although Cassaday's hypothetical situation perhaps poses some practical difficulties, those facts are not present in this case, and are therefore, not before the Court.[11] Nevertheless, a plaintiff-relator can avoid Cassaday's hypothetical quandary by filing a retaliation claim in the *qui tam* lawsuit and requesting or agreeing to arbitration after the *qui tam* lawsuit is unsealed.[12] Alternatively, an individual can file an arbitration of the retaliation claim and request that the administrator stay the arbitration until such time as the *qui tam* lawsuit is unsealed. Under either scenario, the retaliation claim is timely asserted and the *qui tam* claim remains

confidential and does not contravene the purpose of the seal requirement.

To the extent Cassaday contends that arbitration of FCA retaliation claims would alert a defendant to the pendency of a sealed *qui tam* suit, "[t]he only way by which a defendant would even arguably know if a *qui tam* suit was pending is if the plaintiff made the strategic error of seeking arbitration of an FCA retaliation claim prior to the separate filing and unsealing of the *qui tam* complaint. Even then the pendency would be merely inferred." *McBride*, 2007 WL 1954441, at *5 n. 10. This is because nothing in Section 3730(h), the FCA retaliation provision, requires an individual to have actually filed suit under the *qui tam* provisions of the FCA to be protected against retaliation. Put differently, the fact that an individual pursues a retaliation claim is not indicative of whether that same individual also filed a *qui tam* claim. Thus, "premature 'tipping' of the *qui tam* defendants" is entirely preventable if the plaintiff adheres to timing guidelines. *Id.*

In sum, the text of the FCA does not establish Congress intended to preclude arbitration of FCA retaliation claims. Moreover, the practical difficulties of which Cassaday complains, to the extent they actually occur, are self-inflicted wounds. Because the hypothetical situations Cassaday complains of are not present in the instant case and are otherwise preventable, the Court finds Cassaday has not met his burden. *See Green Tree Fin. Corp.*, 531 U.S. at 92, 121 S.Ct. 513.

### 2. *FCA's Legislative History*

Next, Cassaday argues the FCA's legislative history confirms that Congress did not intend for FCA retaliation claims to be

---

**11.** As previously noted, the Court granted the United States of America's motion to unseal the complaint on January 7, 2008 after it declined to intervene.

**12.** KBR notes, and the Court agrees, that nothing in the FCA precludes individuals from commencing an FCA retaliation claim while a related *qui tam* suit is under seal.

arbitrable. Cassaday cites to legislative history indicating that Congress intended for Section 3730(h) to "encourage more private enforcement *suits.*" *See* S. REP. No. 99–345, at 23–24 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5288–5289 (emphasis added). According to Cassaday, Congress, in using the term "suit," demonstrated its intent that FCA retaliation claims should be filed as lawsuits in court and not resolved through arbitration.

Cassaday is correct that the 1986 Amendments to the FCA were enacted to provide whistleblower protection for private litigants who suffer from retaliation after reporting false claims and statements. *See* S. REP. No. 99–345, at 34 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5299 (explaining that Congress sought to "halt companies and individuals from using the threat of economic retaliation to silence whistleblowers"). Cassaday is also correct that Congress intended for Section 3730(h) to encourage more private enforcement suits. *See* SENATE REP. No. 99–345 at 23–24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288–89. ("The Committee's overall intent in amending the qui tam section of the False Claims Act is to encourage more private enforcement suits."). However, other than his unsupported assertion that "suits" means a lawsuit and not an arbitration proceeding, Cassaday points to no specific language in the FCA's legislative history evidencing Congress's intent to preclude arbitration of FCA retaliation claims.

More importantly, Cassaday wholly fails to address the court opinions finding no congressional intent in the FCA's legislative history to preclude arbitration of FCA retaliation claims. *See McBride*, 2007 WL 1954441, at *4 (noting that other courts have found no congressional intent in the FCA's legislative history to preclude arbitration of FCA retaliation claims); *Orcutt*, 199 F.Supp.2d at 757 (explaining that the FCA's legislative history does not clearly indicate that Congress intended for whistleblower claims to be exempt from arbitration); *Nguyen*, 121 F.Supp.2d at 647 (noting that "despite [the plaintiff's] arguments to the contrary, no unmistakable implication from legislative history" indicates Congress's intent to preclude arbitration of FCA retaliation claims); *Mikes*, 889 F.Supp. at 755 (finding that Section 3730(h)'s legislative history does not mention arbitration).

Because Cassaday fails to point to any specific language in the FCA's legislative history manifesting Congress's intent to preclude arbitration of FCA retaliation claims, and because courts have uniformly determined Section 3730(h)'s legislative history does not indicate Congress intended to preclude arbitration of FCA retaliation claims, the Court finds Cassaday has not met his burden to prove the FCA's legislative history establishes Congress intended to preclude arbitration of FCA retaliation claims. *See Green Tree Fin. Corp.*, 531 U.S. at 92, 121 S.Ct. 513.

### 3. *Inherent Conflicts with the FCA's Underlying Purposes*

Next, Cassaday argues that arbitration creates inherent conflicts with the FCA's underlying purposes. According to Cassaday, arbitration of FCA retaliation claims will diminish "public attention that could make other potential whistle-blowers in the field aware of avenues of relief available to them" and cause employees to be "less likely to report instances of fraud" to the government.[13] Although KBR agrees

---

13. Cassaday also argues that private arbitration thwarts judicial economy by duplicating fact-finding and adjudication of issues and increasing litigation costs. Although Cassa-

day's concerns may not be unfounded, the FAA not only contemplates piecemeal litigation, but *"requires* piecemeal resolution when necessary to give effect to an arbitration

with Cassaday that the FCA furthers important public policies by encouraging private citizens to report fraudulent conduct, KBR posits that Cassaday's arguments are "no more than a generalized attack on arbitration of any statutory claim."

The United States Supreme Court has repeatedly recognized that arbitration can appropriately resolve federal statutory claims, and it has enforced agreements to arbitrate such claims. *See Green Tree Fin. Corp.*, 531 U.S. at 90, 121 S.Ct. 513; *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346. According to the Supreme Court, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."[14] *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

Here, Cassaday fails to explain how the important public policies furthered by the FCA are distinguishable from other federal statutes that vindicate similarly important public policies and are nevertheless subject to arbitration.[15] *See McBride*,

2007 WL 1954441, at *4 (noting that "[the plaintiff] is wrong to argue that there is anything unique about § 3730(h) retaliation claims relative to other statutes providing for private actions (including those creating private actions against employers for retaliation), which actions courts have deemed to be arbitrable"); *Orcutt*, 199 F.Supp.2d at 756 (finding "no reason to distinguish an FCA retaliation claim from other civil rights retaliation claims" that are subject to arbitration).

Likewise, to the extent Cassaday relies upon *Nguyen v. City of Cleveland*, 121 F.Supp.2d 643 (N.D.Ohio 2000), in support of his position that an inherent conflict exists, other courts have uniformly rejected *Nguyen*'s reasoning. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 381 (4th Cir.2008) (noting that other courts "have not found *Nguyen* persuasive"); *McBride*, 2007 WL 1954441, at **4–5 (finding that the reasoning of *Nguyen* is "unpersuasive"); *Orcutt*, 199 F.Supp.2d at 753–56 (rejecting *Nguyen* ). Indeed, the *Nguyen* court is the

---

agreement." *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis in original). *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223–24, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding it was error to deny a motion to compel arbitration on grounds that arbitration would result in possibly inefficient maintenance in two forums); *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed.Appx. 462, 466 (5th Cir.2004) (recognizing that the FAA requires piecemeal litigation when necessary to give effect to an arbitration agreement); *Safety Nat'l Cas. Corp. v. Bristol–Myers Squibb Co.*, 214 F.3d 562, 564 (5th Cir.2000) (noting that, under *Moses H. Cone*, the possibility of piecemeal litigation must give way to the overriding federal policy to give effect to arbitration agreements). Thus, the Court finds that any inefficiency that results from piecemeal litigation is overcome by the strong bias in favor of arbitration.

14. As previously explained, the Court finds Cassaday fails to show any intent by Congress

to preclude arbitration of FCA retaliation claim.

15. For example, KBR points out that claims arising under numerous federal statutes designed to further important public policies are subject to arbitration. *See, e.g., Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647 (Age Discrimination in Employment Act); *Rodriguez de Quijas*, 490 U.S. at 486, 109 S.Ct. 1917 (Securities Act of 1933); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp.*, 473 U.S. at 640, 105 S.Ct. 3346 (Sherman Act); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir.2002) (Fair Labor Standards Act); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373 (4th Cir.1998) (42 U.S.C. § 1981); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir.1997) (Family and Medical Leave Act).

only court to find FCA retaliation claims are not arbitrable because an inherent conflict exists between arbitration and the underlying purposes of the FCA. *See Wilson,* 525 F.3d at 381–82 (holding that FCA retaliation claims are arbitrable); *United States ex rel. Godfrey,* No. 1:05cv1418, at 17–18 (E.D.Va. Nov. 13, 2007) (same); *McBride,* 2007 WL 1954441, at \*5 (same); *Orcutt,* 199 F.Supp.2d at 756 (same); *Mikes,* 889 F.Supp. at 756–57 (same). Although the Fifth Circuit has not addressed the arbitrability of FCA retaliation claims, this Court joins the aforementioned courts that have held FCA retaliation claims are indeed arbitrable and finds that Cassaday fails to meet his burden to prove that arbitration of FCA retaliation claims creates an inherent conflict with the FCA's underlying purposes. *See Green Tree Fin. Corp.,* 531 U.S. at 92, 121 S.Ct. 513.

In conclusion, the arbitration agreement is valid and no federal statute or policy renders the claims nonarbitrable. *See JP Morgan Chase & Co.,* 492 F.3d at 598. Therefore, the Court finds Cassaday's FCA retaliation cause of action must be severed and stayed pending arbitration. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 20 (2d Cir.1995) ("If some claims are non-arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court."). Accordingly, the Court hereby

ORDERS that Defendants' Motion to Compel Arbitration, to Sever, and to Stay Arbitrable Claims is GRANTED. Plaintiff's retaliation claim found in Count III of the complaint is hereby SEVERED and STAYED pending arbitration.